Ralph ROBBINS, Plaintiff,

v.

Larry CHRONISTER, Defendant.

No. CIV. A. 97–3489–DJW.

United States District Court,
D. Kansas.

March 16, 2001.

George A. Hanson, Blackwell Sanders Peper Martin LLP, Kansas City, MO, Larry J. Leatherman, Palmer, Leatherman & White, L.L.P., Topeka, KS, Ralph Robbins, Greenville IL, for plaintiff.

F. Charles Dunlay, IV, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Ralph Robbins claims that defendant Officer Larry Chronister used excessive force in violation of his Fourth Amendment constitutional rights in connection with a December 8, 1995 incident in Kansas City, Kansas. A trial to the court was held in this matter from September 18, 2000 through September 20, 2000. The case was tried by Consent Order to U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c)(i). After completion of the transcript, both parties submitted proposed findings of fact and conclusions of law.

The Court has thoroughly considered the evidence and arguments presented at trial. It has relied to a considerable degree on its opportunity to form conclusions about the credibility of the witnesses from close observation of their demeanor while testifying at trial. After a great deal of thought, the Court is now prepared to issues its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). For the reasons set forth fully below, judgment is entered in favor of plaintiff in part and in favor of defendant in part.[1]

## I. Findings of Fact

Defendant Chronister is employed as a police officer with the Kansas City, Kansas Police Department and was so employed at the time of the attempted arrest of plaintiff on December 8, 1995. The parties have stipulated that defendant was acting under color of state law during the incident.

At approximately 3:30 pm on December 8, 1995, defendant, while off-duty and driving home from work in his personal vehicle, a green pickup truck, observed plaintiff in his red 1988 Ford Thunderbird driving along 18th Street in Kansas City, Kansas. Defendant identified plaintiff from a prior encounter approximately one week earlier. During the prior encounter, defendant had contacted the police dispatcher to ascertain whether plaintiff had any outstanding warrants. The dispatcher informed him that plaintiff had five outstanding warrants.

When defendant spotted plaintiff on the afternoon of December 8, 1995, he radioed dispatch and inquired whether the warrants he learned about the week before were still valid. The dispatcher stated: "He has five out of our city confirmed." (Ex. 404). Defendant was also informed that at least one other unit was en route to the scene. Defendant proceeded to turn his vehicle around and follow plaintiff. He observed plaintiff pull his car behind another car fueling at the south pump island at the McCall's gas station located at 2425 Metropolitan Avenue. On that day, it was cold and sleeting and the gas station lot was snow-packed and icy. Defendant testified that he decided to not wait for the on duty officers in police vehicles because he was afraid plaintiff had seen him and would try to leave the area.

Defendant, who was driving his own personal vehicle—a green pickup truck, pulled into the McCall's gas station and parked his vehicle directly behind plaintiff's car.

Attired in his Kansas City, Kansas police uniform but wearing a dark-colored coat, defendant approached the driver's side door of plaintiff's car with his baton in his hand. Defendant testified that he approached plaintiff's car as he would in a traffic stop. Defendant testified he identified himself and ordered plaintiff out of the car. At that time, plaintiff engaged the door locks on his car, placed his car in reverse, and began to back his car into defendant's vehicle. In an effort to arrest plaintiff on the traffic warrants, defendant swung his baton at plaintiff's car window, smashing the driver's side front window, and attempted to pull plaintiff from the car. Plaintiff contends that it was during this struggle that defendant discharged a single shot into the side door of his car. Plaintiff was able to place the car in drive and maneuver the car out from between the vehicle parked in front of his car and defendant's truck parked behind him, accelerating and spinning his tires on the icy payment.

Plaintiff testified at trial that while waiting to purchase fuel, he noticed a man attired in dark clothing standing at his driver's side window holding a large stick. Plaintiff testified that the cold, icy conditions present that day prevented him from getting a clear view of the person standing beside his car door, and his car radio playing loudly prevented him from hearing anything the person may have said to him. Plaintiff testified that he was trying to get away from an unknown threat and did not realize defendant was a police officer.

As plaintiff accelerated from his initial location parked beside the south pump island, defendant ran between the north gas pump island and the car parked at that pump. At the same time, plaintiff attempted to drive between the vehicles parked at the north and south gas pump islands, skidding on the ice and striking

both vehicles. Plaintiff then proceeded to the eastern portion of the parking lot area near the car wash and spun the vehicle around 180 degrees so that the vehicle was headed in a northwesterly direction. Plaintiff then accelerated toward the area east of the north pump island and west of the Metropolitan Avenue exit.

As plaintiff's car approached the sidewalk near Metropolitan Avenue, he spun around another 180 degrees so that the vehicle's rear tires went up over the sidewalk curbing and the vehicle was pointed back in a southeasterly direction. Defendant then ran out from the north pumps towards the eastern part of the parking lot. Plaintiff accelerated the vehicle again when he was over the curb and drove straight toward defendant standing unprotected in the parking lot. As plaintiff's car was accelerating toward defendant, fishtailing back and forth, defendant started shooting at the hood and windshield of plaintiff's car. At some point during this exchange, defendant either slipped on the ice or was knocked to the ground as the plaintiff's car passed by him. Defendant testified that he believed the single shot to plaintiff's driver's side door was fired when the car was fishtailing back and forth or when it brushed past him. Based on the evidence presented, the Court is unable to make an express finding of fact as to exactly when defendant fired the shot that struck the driver's side door of plaintiff's car, and ultimately struck plaintiff in the lower left side.

After passing by defendant, plaintiff exited the gas station parking lot and proceeded west on Metropolitan Avenue where he wrecked his car several blocks away at 37th and Metropolitan Avenue. Plaintiff was thereafter transported to K.U. Medical Center for medical treatment. Plaintiff sustained two gunshot wounds to the chest and one gunshot wound to the lower left side. Consistent with these injuries plaintiff's vehicle had numerous bullet holes in the front windshield and hood of the car and one in the driver's side door. Seven spent shell casings were later recovered from the eastern part of the gas station parking lot.

Plaintiff was subsequently charged in Wyandotte County District Court with one count of aggravated assault on a law enforcement officer. On May 9, 1996, plaintiff entered a guilty plea to the reduced charge of attempted aggravated assault on a law enforcement officer.

On December 10, 1997, plaintiff filed his complaint in this action pursuant to 42 U.S.C. § 1983. Judge Lungstrum, in his ruling denying defendant's motion for summary judgment on July 28, 2000 (doc # 48), stated that "....there is simply nothing inherently inconsistent between plaintiff's conviction for attempted aggravated assault of defendant Chronister, a law enforcement office, and plaintiff's contention that prior to the conduct for which he was convicted, defendant Chronister utilized unlawful force in an attempt to effect an otherwise lawful arrest."

## II. Conclusions of Law

■ A civil rights plaintiff proceeding under 42 U.S.C. § 1983 must allege and prove, by a preponderance of the evidence, that (1) he was deprived of a right secured by the federal Constitution or laws of the United States and (2) "the person who has deprived him of that right acted under color of state law." *Houston v. Reich,* 932 F.2d 883, 890 (10th Cir.1991) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980)).

■ In the Tenth Circuit, excessive force claims are to be analyzed "under the reasonableness standard of the Fourth Amendment." *Romero v. Board of County Comm'rs,* 60 F.3d 702, 704 (10th Cir. 1995). Although law enforcement officers

are entitled to use some degree of force in the execution of their duties, the force used must be "objectively reasonable." *Graham v. Connor,* 490 U.S. 386, 396–99, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether the force used is objectively reasonable is determined in light of the particular facts of each case; in making such a determination the court is to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. An officer's use of deadly force is permissible under the Fourth Amendment only "if a reasonable officer in [d]efendant['s] position would have had probable cause to believe there was a threat of serious physical harm to themselves or to others." *Sevier v. City of Lawrence, Kan.,* 60 F.3d 695, 699 (10th Cir.1995) (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). In deciding what is reasonable under the circumstances, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}/_{20}$ vision of hindsight." *Id.* at 396, 109 S.Ct. 1865.

In analyzing this case, the Court separates the conduct of defendant into three acts: (1) defendant's using his baton to break plaintiff's driver's side car window; (2) defendant's firing of a single bullet into the driver's side door of plaintiff's car, striking plaintiff in the lower abdomen; and (3) defendant's firing of several bullets into the hood and windshield of plaintiff's car, two of which struck plaintiff in the chest.

## A. Using a baton to break the car window

Plaintiff argues that defendant's breaking of his car window to effect his arrest for outstanding traffic warrants was objectively unreasonable. Plaintiff contends that defendant's use of force was unreasonable in that plaintiff was sitting peacefully in his car waiting for a vacant gas pump when an unknown person approached him. Plaintiff had only engaged his door locks and started to leave prior to this unknown person, who turned out to be defendant Officer Chronister, smashing his car window and attempting to pull him from the car.

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, ... proper application requires careful attention to the facts and circumstances of [a] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect." *Id.* The relevant question for the court is not whether plaintiff acted in a threatening manner but whether the officer reasonably believed so. *Pride v. Does,* 997 F.2d 712, 717 (10th Cir.1993) (citing *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)). The inquiry is not into the assailant's state of mind or intentions, but whether, from an objective viewpoint and taking all factors into con-

sideration, the officer reasonably feared for his life. *Wilson v. Meeks,* 52 F.3d 1547, 1553 (10th Cir.1995).

 In this case, the Court holds that the amount of force used by defendant in attempting to effect plaintiff's arrest for traffic warrants was objectively unreasonable. Defendant, as an off-duty police officer driving his own personal vehicle, was attempting to arrest plaintiff for five outstanding warrants, when on-duty officers in police vehicles were en route for that purpose. The Court finds that a reasonable police officer would not have considered the charges underlying plaintiff's outstanding warrants to be a serious threat to the community necessitating either generally to arrest defendant before on-duty police units arrived on the scene or specifically to break his car window with a baton in that effort. Defendant testified that he asked the police dispatcher to dispatch units to the area where plaintiff was located. Rather than waiting for an on-duty police officer to arrive on the scene, defendant decided that he would arrest plaintiff. Defendant's assertions that plaintiff had recognized him in his personal vehicle and that plaintiff was trying to leave the area are not supported by the evidence. In fact, no evidence, other than defendant's testimony, was presented that plaintiff had seen defendant, recognized him as a police officer, and was trying to leave the McCall's gas station prior to defendant approaching plaintiff's car.

Also, no evidence indicates that, at the time defendant initially approached plaintiff, plaintiff posed an immediate threat to the safety of defendant or others. The evidence supports the finding that plaintiff was sitting in his car with the engine running at the gas station waiting to purchase fuel. Plaintiff's subsequent conduct, which resulted in plaintiff being shot and charged with a crime, did not justify defendant's initial unreasonable use of force.

Accordingly, the Court holds that defendant's use of force in breaking plaintiff's driver's side car window while plaintiff was seated in the driver's seat in an effort to effect plaintiff's arrest was objectively unreasonable and constituted a violation of plaintiff's Fourth Amendment rights. Because plaintiff suffered no physical injury from the use of the baton, he is awarded only nominal damages of one dollar. Pursuant to 42 U.S.C. § 1988, plaintiff is entitled to an award of attorney's fees, costs, and expenses associated with his prevailing on this portion of this case. Counsel are ordered to confer and attempt to reach an agreement regarding the fee award. *See* D. Kan. Rule 54.2.

## B. Firing a single bullet into the car door and into plaintiff's side

 Plaintiff also argues that defendant's firing into the side of his car door and into plaintiff's side was objectively unreasonable because defendant did not have probable cause to believe there was a threat of serious physical harm to himself or others. Plaintiff contends that when defendant discharged his weapon into the driver's side of plaintiff's car plaintiff's car was still parked by the south gas pump island. In contrast, defendant contends that he did not discharge his weapon until plaintiff drove toward him in an aggressive manner in the eastern part of the gas station parking lot. Defendant speculates that he fired either when the car was fishtailing back and forth coming toward him or when it brushed past him immediately prior to leaving the scene.

The Court is unable to make an express finding of fact as to exactly when defendant fired the shot that struck the driver's side door of plaintiff's car, and ultimately struck plaintiff in the lower left side. Plaintiff has not proven by a preponderance of the evidence that defendant fired

the shot which struck the driver's side door of plaintiff's car and plaintiff in the lower left side at a time when defendant did not have probable cause .to believe there was a threat of serious physical harm to himself. Plaintiff's version of events indicating that defendant fired at the side of plaintiff's car while it was parked at the south gas pump island is not corroborated by sufficient evidence presented at trial. In fact, all eyewitness testimony and the position of most of the spent shell casings appear to directly contradict plaintiff's assertion that defendant fired a single shot at the side of plaintiff's car while plaintiff's car was located at the south gas pump island. Plaintiff's argument that there is another shell casing shown in the photo of the area where the car was when the window was broken by the baton is not persuasive.

All eyewitnesses, other than plaintiff, who testified at trial stated that they did not hear any shots until plaintiff's car was located in the eastern side of the gas station, spinning and fishtailing around on the ice and snow. Eyewitness Avila testified that the first noises she heard were metal crunching and tires squealing. (T. 301) She testified that she did not hear any gunshots until she saw plaintiff's vehicle, positioned between the sidewalk along Metropolitan and the north pumps, driving toward defendant, who was located in the eastern part of the gas station lot. (T. 305) Eyewitness Lowe testified that his attention was caught initially by the sound of plaintiff's vehicle's tires "singing," spinning on ice and snow. (T. 352, 368) He also testified that he did not hear any shots prior to hearing the tires singing. (T. 368) Eyewitness Rahiji testified he was sitting at the stoplight at 25th and Metropolitan when he heard a "pop, pop, pop, pop sound" which he immediately recognized as gunfire and saw a person, he assumed was a police officer based on the stripes on his pants, firing a weapon at a

vehicle in the McCall's parking lot. At that time the vehicle was fishtailing through the snow heading directly at the officer. (T. 321) He testified that he did not hear any gunfire prior to the "pop, pop, pop, pop sound" he heard. (T. 325)

Based upon the testimony and evidence presented at trial, the Court holds that plaintiff has failed to prove, by a preponderance of the evidence, that defendant began firing at the side of plaintiff's car at a time when the officer was not under a threat of serious physical harm to himself or to others present in the gas station lot from plaintiff's car. Accordingly, the Court cannot find defendant's use of deadly force in firing a single shot into the side of plaintiff's car to be objectively unreasonable. As such, the Court holds that plaintiff has failed to prove by a preponderance of the evidence that defendant's use of deadly force in firing the single shot into the side of plaintiff's car violated plaintiff's Fourth Amendment rights to be free from excessive force.

### C. Firing shots into plaintiff's car hood and windshield and into plaintiff's chest

Plaintiff also argues that the defendant's actions of firing several shots into the hood and windshield his car door were objectively unreasonable because the defendant did not have probable cause to believe there was a threat of serious physical harm to himself or others. Plaintiff argues that he was attempting to flee the scene and was not trying to run over defendant. Defendant contends that his use of deadly force in shooting at the hood and windshield of defendant's car was objectively reasonable because plaintiff's car accelerated toward him as he was standing unprotected in the eastern part of the parking lot.

The Court finds that the evidence supports defendant's contention that plaintiff's

car was accelerating toward him at the time he fired the shots striking the hood and windshield of plaintiff's car. Eyewitness Avila testified that she observed plaintiff's car spinning its wheels and fishtailing back and forth and a police officer running toward the front of the car. (T. 293) She testified that the front wheels of plaintiff's car were turned toward the exit onto Metropolitan when she first looked out the window but thereafter plaintiff changed the position of the car's front wheels so that car was headed toward the police officer. (T. 297) She also testified that when the officer ran out away from the pumps, plaintiff's car stopped moving and the front wheels "straightened up." (T. 297–8) She noted that the back end of plaintiff's car was going up and down, giving her the impression that the car was revving up before the back wheels started moving and the car lurched forward. (T. 298) As the car headed toward the police officer, the officer started shooting towards the car. (T. 298–9)

Eyewitness Lowe testified that he saw a car drive between the north and south pump islands toward the eastern part of the parking lot. (T. 353–4) He next saw a man in the eastern part of the parking lot, backing up with his hand up and the car coming toward him. (T. 354–5) He testified that the man's mouth was moving like he was yelling and he pulled out his gun or had his gun and shot at the front of plaintiff's car. (T. 355)

Eyewitness Rahiji testified that he observed a police officer firing a weapon at the front of plaintiff's vehicle, which was fishtailing through the snow and heading directly at the officer in the eastern part of McCall's parking lot. (T. 321)

The evidence supports defendant's contention that plaintiff's car was accelerating toward him and placing him in danger at the time defendant fired the shots striking the hood and windshield of plaintiff's car.

The Court therefore holds that defendant's use of deadly force in firing the shots which struck the hood and windshield of plaintiff's car and plaintiff's chest was objectively reasonable and did not violate plaintiff's Fourth Amendment rights to be free from excessive force.

**IT IS THEREFORE ORDERED BY THE COURT** that judgment be entered in favor of plaintiff for defendant's use of his baton to break plaintiff's car window in initially attempting to arrest plaintiff under the circumstance existing at the time. Plaintiff is therefore awarded nominal damages of one dollar. Pursuant to 42 U.S.C. § 1988, Plaintiff is also entitled to an award of attorney's fees, costs, and expenses associated with the portion of the case on which he has prevailed. Counsel are ordered to confer and attempt to reach an agreement regarding the fee award. *See* D. Kan. Rule 54.2.

**IT IS THEREFORE ORDERED BY THE COURT** that judgment be entered in favor of defendant in all other respects.

**IT IS SO ORDERED.**